UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES SULLIVAN, No. 02-B-0341,

        Petitioner,

      -v-                          06-CV-6593(MAT)
                                          **ORDER**
GLENN S. GOORD, Commissioner,
N.Y.S. Dept. of Correctional Services,

        Respondent.

## I.    Introduction

*Pro se* petitioner Charles Sullivan ("petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of two counts each of Attempted Murder in the Second Degree (N.Y. Penal Law ("P.L.") §§ 125.25[1], 110.00, 20.00), Assault in the Second Degree (P.L. §§ 120.05[2], 20.00), and Reckless Endangerment in the First Degree (P.L. § 120.25); and one count each of Assault in the First Degree (P.L. § 120.10[1], 20.00) and Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03[2]). Petitioner was convicted in Erie County Court following a jury trial before Judge Michael D'Amico. He was subsequently sentenced to concurrent terms of imprisonment, the longest of which is twelve years with five years of post-release supervision. Sentencing Mins. at 4.

## II.  Factual Background and Procedural History

### A.    Trial

Petitioner's convictions stem from a May 6, 2000 drive-by

shooting on Moselle Street in the City of Buffalo, wherein petitioner fired shots at five adults and one child, striking and injuring three of the adults.

At petitioner's trial, witnesses for the prosecution testified that they recognized petitioner in his car, heard him speak, and saw flashes of fire from his window. One of the witnesses was petitioner's ex-girlfriend. Trial Transcript ("Tr.") 88-90, 137-39, 179-81. A Colt .45 caliber pistol, forensically connected to the shooting, was seized from Archie Price on May 24, 2000, who testified that he purchased the gun from petitioner shortly after the shooting for $250. Tr. 228-30, 283, 287-88. According to the prosecution's witnesses, the shooting was believed to be in retaliation for a prior robbery committed against the petitioner by some of the victims. Tr. 73-78, 118, 129-30, 134, 171-74.

The defense called two witnesses at trial to offer alibis. Petitioner did not testify in his own behalf.

### B.  Appeal and Post-Conviction Relief

Through counsel, petitioner filed a brief on direct appeal, raising seven points. <u>See</u> Respondent's Exhibit ("Ex.") B. He also filed a *pro se* supplemental brief containing three additional grounds for appellate review. <u>See</u> Petitioner's ("Pet'r") Pro Se Supplemental Br. dated 8/8/2004. The Appellate Division, Fourth Department, unanimously modified petitioner's judgment on the law by reducing the mandatory surcharge and crime victim assistance

fee, and affirmed the judgment as modified. <u>People v. Sullivan</u>, 12 A.D.3d 1046 (4th Dept. 2004), <u>lv. denied</u>, 4 N.Y.3d 803 (2005).

On July 18, 2005, petitioner brought a motion pursuant to N.Y. Crim. Proc. Law ("C.P.L.") § 440.10 seeking to vacate the judgment on the following grounds: (1) the prosecutor knowingly adduced false evidence in the grand jury and at trial; (2) <u>Rosario</u> and <u>Brady</u> violations; (3) ineffective assistance of trial counsel; and (4) newly-discovered evidence. Ex. D. The county court denied petitioner's claims on procedural grounds and also on the merits. <u>See</u> Memorandum and Order, No. 00-1232-001, dated 2/10/2006; Ex. D. Leave to appeal that decision was denied on July 7, 2006. Ex. D.

### C. Petition for Habeas Corpus

Petitioner then filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging the following grounds for relief: (1) the trial court abused its discretion in failing to preclude the prosecution's ballistics evidence / <u>Rosario</u> violation; (2) the trial court erred in refusing to deliver a missing witness charge; (3) the indictment was constructively amended; (4) the indictment was obtained by the use of false evidence; (5) ineffective assistance of trial counsel; (6) a <u>Brady</u> violation as to the status of a police informant; and (7) the county court improperly denied petitioner's § 440.10 motion / newly-discovered evidence. <u>See</u> Petition ("Pet.") ¶ 12(a)-(g) (Dkt. #1). He has also provided the Court with a memorandum of law in support of the

petition. (Dkt. #15). For the reasons that follow, the petition for habeas corpus is denied and the action is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan</u>

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### 2. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see</u>, <u>e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### 3. Adequate and Independent State Grounds Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice," i.e., that the

petitioner is actually innocent. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B.    Merits of the Petition**

**1.    <u>Rosario</u> Violation: Ballistics Report**

Petitioner argues in Ground One of his petition that the trial court erred in refusing to preclude ballistics testimony linking petitioner to the weapon used in the shooting. Pet. ¶ 12(a). In

substance, however, petitioner argues that the prosecution failed to turn over discoverable evidence under <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961)[1], and that such evidence was exculpatory under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)[2]. Pet. ¶ 12(a); Pet'r Mem. 4-5.

On the second day of trial, the prosecutor provided a ballistics report that connected the crime scene bullets and casings to a gun that was linked to petitioner. Defense counsel argued that the ballistics documents were discoverable, had been requested, and should have been previously divulged under <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961). Tr. 219-227. The trial court agreed, and, although it did not preclude the prosecution from presenting that evidence, it did offer defense counsel an adjournment: "I'll accommodate you and I will give you the time you need to study [the report] and prepare for whatever cross you feel is warranted." Tr. 225.

Generally, a claim of a <u>Rosario</u> violation, i.e., that the prosecution must turn over all witnesses' statements, regardless of whether they are favorable, is not one that is cognizable on habeas

---

[1] <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961) (prosecutor has obligation, prior to trial, to make available to the defense any written/recorded statement made by a person whom prosecutor intends to call as a witness at trial, and which relates to the subject matter of witness's testimony); <u>see also</u> C.P.L. 240.45(1)(a).

[2] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (Suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

review because it presents only an issue of New York state law. See, e.g., Randolph v. Warden, Clinton Corr. Facility, No. 04 CIV. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of state law"); Del Pilar v. Phillips, No. 03 CIV.8636, 2004 WL 1627220, at * 13 n. 33 (S.D.N.Y. July 21, 2004) ("[t]o the extent that this claim is based on a Rosario violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over Rosario material arises under state law") (internal quotation and citation omitted); Stephens v. Costello, 55 F.Supp.2d 163, 167 (W.D.N.Y. 1999); Johnson v. Filion, 232 F.Supp.2d 98, 99 (S.D.N.Y. 2002). Because petitioner has only alleged a violation of state law, he is unable to obtain habeas relief on this ground.

Petitioner goes on to argue in his memorandum of law that the ballistics report also constituted Brady[3] material because it was exculpatory. Petitioner's ("Pet'r") Mem. at 4-5. I note that petitioner's claim is unexhausted because it was never raised in federal, constitutional terms to any state court. See Ex. B-D. The Court may deny unexhausted claims on the merits despite petitioner's failure to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b)(2). The majority of district courts in this

---

[3] Brady v. Maryland, 373 U.S. 83 (1963) (Suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

circuit have followed a "patently frivolous" standard for denying unexhausted claims. Colorio v. Hornbeck, No. 05 CV 4984(NG)(VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009) (citing Brown v. State of New York, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005) (citing Naranjo v. Filion, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003) (collecting cases)) (footnote omitted)), while a minority of district courts have exercised § 2254(b)(2) discretionary review when "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,'" Hernandez v. Lord, No. 00-CIV-2306, 2000 WL 1010975, at *4 n.8 (S.D.N.Y. Jul. 21, 2000) (collecting and analyzing cases). Another test that has been suggested in this Circuit is that unexhausted claims should be reviewed under a "heightened de novo standard." King v. Cunningham, 442 F.Supp.2d 171, 179 (S.D.N.Y. 2006).

Petitioner's claim fails under any standard, as he cannot demonstrate that the ballistics report was favorable to his defense under Brady. To the contrary, the ballistics report linked the crime scene bullet casings to a gun that was previously in petitioner's possession. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999) (To establish a Brady violation, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.). To that end, petitioner's Brady

claim is without merit and is dismissed.

## 2. Missing Witness Instruction

Petitioner asserts that the trial court erred in refusing to deliver a missing witness charge with respect to three of the victims. Pet. 12 ¶ (b). Petitioner argued on direct appeal that he was entitled to the charge because the witnesses were available and knowledgeable.[4] On direct appeal, the Fourth Department held that "any error in the failure to provide the requested charge is harmless in light of the overwhelming evidence of defendant's guilt." <u>Sullivan</u>, 12 A.D.3d at 1048.

The Court need not examine whether petitioner was entitled to the charge as a matter of New York law. Here, the trial court made the factual determination that there was an insufficient basis on which to find a crucial element of the missing witness charge–that the witnesses were not under the control of the prosecution. Tr. 400. "[I]n a habeas proceeding, 'a determination of a factual issue made by a state court shall be presumed to be correct,' unless rebutted by clear and convincing evidence." <u>Morris v.</u>

---

[4] Under New York law, a party seeking the missing witness charge must sustain a burden of showing that the opposing party has failed to call a witness who could be expected to have knowledge regarding a material issue in the case and to provide testimony favorable to the opposing party. <u>People v. Gonzalez</u>, 68 N.Y.2d 424 (1986). The burden then shifts to the opposing party, who must demonstrate: (1) the witness is not knowledgeable about the issue, (2) the issue is not material or relevant, (3) that, although the issue is material or relevant, the testimony would be cumulative to other evidence, (4) that the witness is not available to testify at trial, or (5) the witness is not under the party's control, "such that he would not be expected to testify in his or her favor." <u>People v. Macana</u>, 84 N.Y.2d 173, 177 (1991) (citations and quotations omitted).

Reynolds, 264 F.3d 38, 47 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(e)(1)). Since petitioner has not come forward with any evidence to rebut this presumption of correctness, which is owed deference, he cannot obtain habeas relief on this claim. See Correa v. Duncan, 172 F.Supp.2d 378, 382 (E.D.N.Y. 2001) (denying habeas relief on claim alleging failure to give missing witness instruction where petitioner failed to rebut presumption of correctness accorded to trial court's factual determination that testimony of missing witnesses was cumulative, making charge unwarranted).

In any event, assuming petitioner was entitled to the missing witness charge, both New York and federal law subject such errors to review for harmlessness. Cato v. Superintendent of Groveland Corr. Facility, 463 F.Supp.2d 367, 377 (W.D.N.Y. 2006). Where, as here, a state court has explicitly conducted harmless-error review, the Second Circuit has directed that under AEDPA, a habeas court must evaluate whether the state "unreasonably applied" the standard set forth in Chapman v. California, 386 U.S. 18, 24 (1967) (An error may be overlooked only if it is "harmless beyond a reasonable doubt."). Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004). "The [Chapman] Court equated this standard to the way it framed the inquiry in a prior case, as "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Gutierrez, 389 F.3d at 303 (quoting Chapman,

386 U.S. at 24) (other citations and quotations omitted).

At petitioner's trial, three witnesses, who were well-acquainted with petitioner, identified petitioner as approaching the house in his car. All three saw gunfire come from his hand or his window. Tr. 89-90, 137-39, 179-80. One of those witnesses was involved in a robbery committed against petitioner in late 1999, and another was a witness to that robbery. Tr. 128-30, 145, 147, 169, 188. Petitioner was also linked to the gun that was used in the shooting. Tr. 228-30, 283, 287-88. On the other hand, petitioner presented an incomplete and incredible alibi defense. One alibi witness testified that he was with petitioner the night of the shooting, but may have fallen asleep and assumed that he would have awakened if he heard petitioner leave the house. Tr. 329-46. Petitioner's uncle testified that he and petitioner drove to Indiana together in April of 2000 for a job interview, and that petitioner stayed with relatives in Indiana while his uncle returned to Buffalo. The uncle testified that he spoke with petitioner several times by phone while petitioner was in Indiana, as evidenced by his phone's caller ID feature. Petitioner's uncle did not know, however, whether petitioner returned to Buffalo between the April, 2000 trip and petitioner's phone call on May 20, 2000, received from Indiana. Tr. 353-559.

Due to the strength of the prosecution's case against petitioner, the trial court's refusal to grant the missing witness

charge was harmless error.  Accordingly, the Appellate Division did
not contravene Supreme Court precedent, and this claim is
dismissed.

### 3.  Improperly Amended Indictment

Petitioner argues that the indictment was constructively
amended with respect to the assault charges because the prosecution
presented evidence that one of the victims was shot with a .9
millimeter handgun, rather than the .45 caliber Colt pistol that
petitioner was alleged to have used in the commission of the crime.
See Pet. ¶ 12(c); Pet'r Mem. 6-7.  The Appellate Division rejected
that contention on the merits: "The evidence that defendant, or his
accomplice, shot those victims with a deadly weapon is sufficient
to sustain [the assault convictions] . . . without the need for
proof of the additional facts alleged in the indictment regarding
the caliber and make of the firearm." Sullivan, 12 A.D.3d at 1048
(quoting People v. Buanno, 296 A.D.2d 600, 601 (3rd Dept. 2002))
(alteration in original).

The Fifth Amendment protects a criminal defendant from being
convicted of a different offense from that which was included in
the indictment returned by a Grand Jury. Stirone v. United States,
361 U.S. 212, 217 (1960). "An unconstitutional amendment of the
indictment occurs when the charging terms are altered, either
literally or constructively, such as when the trial judge instructs
the jury. In contrast, a variance occurs when the charging terms

are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." <u>United States v. Helmsley</u>, 941 F.2d 71, 89 (2d Cir. 1988) (citing <u>United States v. Zingaro</u>, 858 F.2d 94, 98-99 (2d Cir. 1988)). Variances are subject to the harmless error rule and thus are not grounds for reversal without a showing of prejudice to the defendant. Constructive amendments, however, are *per se* violative of the Fifth Amendment. <u>Id.</u> (citing <u>Zingaro</u>, 858 F.2d at 98; <u>United States v. Weiss</u>, 752 F.2d 777, 787 (2d Cir.), <u>cert. denied</u>, 474 U.S. 944 (1985).

Here, the charging terms were not altered. In its instructions to the jury, the trial court read the indictment, which specified the make and caliber of the firearm for the assault counts. The trial court did not, however, include that information in its explanation of the essential elements of second-degree assault to the jurors. Tr. 520-22; <u>see</u> P.L. §§ 120.10[1]; 120.05[2]. Nor is it clear that there was a variance, since the proof at trial did not vary materially from the facts alleged in the indictment. As the state court found, the evidence established that petitioner and an accomplice drove up to a house on Moselle Street in the City of Buffalo and fired several shots from the car window. The fact that one victim was struck by a .9 millimeter bullet instead does not change the prosecution's theory of how the assailant intended to injure his targets. Consequently, the Appellate Division did not

unreasonably apply clearly established federal law, and petitioner cannot obtain habeas relief on this ground.

### 4. Use of False Evidence at the Grand Jury

Petitioner claims, as he did his C.P.L. § 440.10 motion that the prosecutor knowingly used false evidence regarding the sale of the gun to Archie Price in the grand jury proceeding. Pet. ¶ 12(d). The county court denied petitioner's motion, citing to C.P.L, § 440.10(2)(c), which requires that the court deny a motion where the petitioner unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record. The Second Circuit has recognized § 440.10(2)(c) as an adequate and independent state ground barring habeas review. See Levine v. Comm'r of Corr. Services, 44 F.3d 121, 126 (2d Cir. 1995) (refusing to conduct federal habeas review where New York's appellate court found claim to be procedurally barred under C.P.L. § 440.10(2)(c)); accord Sweet v. Bennett, 353 F.3d 135 (2d Cir. 2003); see also Smith v. West, 640 F.Supp.2d 222 (W.D.N.Y. 2009).

Because there is an adequate and independent finding by the state court that petitioner procedurally defaulted this claim in his C.P.L. § 440.10, motion, he must show in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Petitioner argues that ineffective assistance of appellate counsel constitutes "cause" because she advised petitioner that the grand jury issue would not likely be reversible on appeal, but that he did have the right to file a *pro se* supplemental brief detailing that issue. See Pet'r Mem. 7-9; Letter from Kristin Preve, Esq. dated 1/30/2004. While ineffective assistance of counsel can cause a procedural default, such a claim must be properly exhausted in the state courts before it may be used to establish cause for a procedural default. Murray v. Carrier, 477 U.S. 478, 488-89 (1986). Petitioner has not made out such a claim in the state courts, and therefore cannot raise it in the instant petition to excuse the procedural default. Furthermore, petitioner has not made a showing of "actual innocence" required to qualify for the "fundamental miscarriage of justice" exception.[5] See Schlup v. Delo, 513 U.S. 298, 314-16, (1995). As such, petitioner's claims are not properly before this Court, and are dismissed.

### 5. Ineffective Assistance of Trial Counsel (Ground Five)

Petitioner attacks his trial counsel's effectiveness on the ground that his attorney failed to seek an adjournment after receiving the prosecution's ballistics report on the second day of trial. Pet. ¶ 12(e); Pet'r Mem. 10-11. The Appellate Division held

---

[5] Petitioner does assert a stand-alone claim of newly-discovered evidence in Ground Seven of the instant petition. However, the evidence in the record does not constitute "new reliable evidence" to support a credible claim of actual innocence, as discussed infra at III.B.6. See Schlup, 513 U.S. at 324.

that defense counsel "cross-examined prosecution witnesses where appropriate with probing questions. He also entered appropriate objections and made appropriate motions on behalf of defendant. Moreover, defense counsel called two witnesses to offer alibis. We therefore conclude that defendant received meaningful representation." Sullivan, 12 A.D.3d at 1048.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Here, petitioner has failed to demonstrate that his

counsel's conduct was deficient within the meaning of <u>Strickland</u>, and that, but for the deficiency, the result of his trial would likely have been different.

On the outset, the record indicates that the decision to move forward without an adjournment was petitioner's decision, and counsel did not state that he disagreed with that decision. The trial court then inquired of petitioner whether he wanted to proceed without an adjournment, and petitioner answered affirmatively. Tr. 262. The record suggests that counsel and petitioner were in strategic agreement on that issue, and petitioner does not now argue that the decision not to seek an adjournment was a result of poor legal advice. He thus cannot demonstrate the absence of a strategic or other legitimate explanation to forgo an adjournment. <u>Strickland,</u> 466 U.S. at 681, 688-89.

Moreover, petitioner does not substantiate his allegation that he was prejudiced by his attorney's decision not to seek an adjournment upon receiving the ballistics report from the prosecutor. Although petitioner speculates that his attorney should have hired "a professional in ballistics, an investigator, and a landscape analyst," he does not state how that would have changed the outcome of his trial, given the strength of the prosecution's case against him. <u>See</u> Pet'r Mem. at 11. As observed by the Appellate Division, counsel skillfully cross-examined the

prosecution's ballistics expert, seeking to weaken the link between the bullet fragments at the crime scene and petitioner. Tr. 290-91. Because petitioner cannot meet either prong of <u>Strickland</u> on this ground, habeas relief is denied.

### 6. <u>Brady</u> Violation: Police Informant

Petitioner contends that the prosecution committed a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), because it did not disclose that witness David Haygood ("Haygood") was a police informant that had previously testified for the prosecution in other cases. Pet. ¶ 12(f); Pet'r Mem. at 12-13. Petitioner specifically argues, so far as the Court can surmise, that Haygood was not a credible witness, and therefore Haygood's status as an informant was impeaching. <u>Id.</u> at 13. The Appellate Division rejected this contention on the merits. <u>Sullivan</u>, 12 A.D.3d at 1049.

In <u>Brady v. Maryland</u>, the Supreme Court ruled that a defendant's due process rights are violated if the government suppresses favorable evidence that is material to guilt or punishment, irrespective of the prosecution's good or bad faith. <u>Brady v. Maryland</u>, 373 U.S. at 87. <u>accord, e.g.</u>, <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999). Evidence is considered "material" if there is a reasonable probability that, had the evidence been disclosed, the result of the court proceeding would have been different. <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995).

Thus, "there are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued." <u>Strickler</u>, 527 U.S. at 281-82. Both exculpatory and impeaching evidence may satisfy the "favorable to the accused" prong. <u>E.g.</u>, <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004); <u>United States v. Payne</u>, 63 F.3d 1200, 1210 (2d Cir. 1995).

Here, petitioner's <u>Brady</u> claim is largely unsubstantiated, and "[i]t is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." <u>Mallet v. Miller</u>, 432 F.Supp.2d 366, 377 (S.D.N.Y.) (citing <u>Strickler</u>, 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review.")); <u>accord</u> <u>United States v. Upton</u>, 856 F.Supp. 727, 746 (E.D.N.Y. 1994) ("As a matter of law, mere speculation by a defendant that the government has not fulfilled its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), is not enough to establish that the government has, in fact, failed to honor its discovery obligations."). Instead, petitioner baldly asserts that: (1) Haygood had been used on more than one occasion to testify for the prosecution in other criminal cases; and (2) the prosecution

did not disclose this information, or the witness's statements, prior to trial. Petitioner further contends that the fact that the information was withheld proves that the prosecution "knowingly allowed [its] witness to commit perjury." Pet'r Mem. 12-14. There is nothing in the record, however, that supports these contentions.

Assuming this information was in fact suppressed, petitioner would still not be entitled to habeas relief. Although it is true that the suppression of a witness's informant status can be "material" for Brady purposes, see Banks, 540 U.S. at 672 (2004), the Second Circuit has held that "[s]uppressed impeachment evidence is 'material if the witness whose testimony is attached supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.'" United States v. Diaz, 176 F.3d 52, 108 (2d Cir. 1999) (quoting United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996)).

Here, Haygood's status as an informant was not essential to the defense because ultimately, Haygood did not provide any testimony at trial relevant to the prosecution's case.[6] See Lyon v. Senkowski, 109 F.Supp.2d 125, 139 (W.D.N.Y. 2000) ("Since [witness's] testimony did not directly link [petitioner] to the

---

[6] The record indicates that Haygood testified that two of the victims were his cousins, and heard upon his release from jail on June 12th, 2000, that they had been shot at. He further testified that he saw petitioner in a car driving down Schuele Street in Buffalo, but never had a conversation with petitioner. Tr. 266-70.

crime or provide an essential element of the offense, evidence impeaching him would not have been material under <u>Brady</u>."). Moreover, his status would not have been impeaching enough to overcome the testimony of three eyewitnesses or the forensic evidence presented at trial, and there is not a reasonable probability that disclosure of Haygood's status would have led to a different verdict. Consequently, I conclude that the Appellate Division's decision was not an unreasonable application of, or contrary to the precepts of <u>Brady v. Maryland</u>.

### 7. Newly Discovered Evidence

As a final ground for habeas relief, petitioner claims that new evidence was discovered after his conviction that would "cast serious doubt and if presented at trial would have been favorable to petitioner." Pet. ¶ 12(g); Pet'r Mem. 14-15. Specifically, petitioner refers to evidence of police notes, medical records, a ballistics report, and statements of alleged alibi witnesses. In denying petitioner's § 440.10 motion, the county court held that: (1) the police notes were not exculpatory in nature; (2) none of the evidence was newly-discovered in that it was in defense counsel's possession at the time of trial; (3) one of the signed statements by an alibi witness was not in affidavit form; and (4) the second signed statement was not new evidence because it was cumulative to an another defense witness's testimony at trial. <u>See</u> Memorandum and Order, No. 00-1232-001, dated 2/10/2006.

The Second Circuit has demonstrated a reluctance to review stand-alone claims of actual innocence. "A claim 'based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003) (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993); see also Greene v. Walker, 205 F.3d 1322 (2d Cir. 1999) (unpublished opinion). The Supreme Court in Herrera reasoned that, "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." 506 U.S. at 401. This rule is grounded in the principle that habeas courts do not sit to correct errors of fact, but rather to ensure that individuals are not imprisoned in violation of their federal constitutional rights. 506 U.S. at 400.

The majority of district courts in this circuit have consistently held the same. See Green v. Walsh, No. 03CV00908 (GBD)(DCF), 2006 WL 2389306 at *18 (S.D.N.Y. Aug. 17, 2006) ("Although Petitioner contends that he is actually innocent of the crimes for which he was convicted, and that Smith was the true perpetrator of D .W.'s rape and assault, a stand-alone claim of actual innocence is not cognizable on habeas review.") (internal citations and quotations omitted); Ortiz v. Woods, 463 F.Supp.2d 380 (W.D.N.Y.2006) (noting the Supreme Court's declaration in

<u>Herrera</u> that absent an independent constitutional violation at trial, a claim of newly discovered evidence does not provide a basis for habeas relief); <u>Bravo v. Couture</u>, No. 98-CV-8050 (JBW), 03-MISC-0066 (JBW), 2003 WL 22284147 at *4 ("Habeas corpus review does not extend to 'freestanding claims of actual innocence.'").

Adopting the reasoning of <u>Herrera v. Collins</u>, and the Second Circuit, this Court finds that petitioner's stand-alone claim of "actual innocence" due to newly-discovered evidence is not cognizable in this habeas proceeding.

Insofar as petitioner attempts to challenge the decision of the county court, he has already exhausted that remedy in the state courts by way of seeking leave to appeal the decision to the Appellate Division, Fourth Department. The Court reminds petitioner that a federal court sitting on habeas review is not an appeals court to review state court errors unless they present a constitutional infirmity. <u>Grant v. Demskie</u>, 75 F.Supp.2d 201, 221 (S.D.N.Y. 1999); <u>see generally</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 68. Accordingly, this claim is dismissed.

## IV. Conclusion

For the reasons stated above, Charles Sullivan's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
                 MICHAEL A. TELESCA
                 United States District Judge

Dated:     March 26, 2010
           Rochester, New York